UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, *et al.*, | ) |
| | ) Case No. 17 C 5758 |
| Plaintiffs, | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| v. | ) |
| | ) |
| ABN BUILDING MAINTENANCE, Inc., | ) |
| an Illinois corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs (a number of benefits funds, the funds' administrator, and the Construction & General Laborers' District Council of Chicago & Vicinity ("the District Council" or "the Union") originally filed this action in August 2017 seeking audits and payment of contributions for benefits and union dues for the period June 17, 2016 going forward (doc. # 1: Complaint). Plaintiffs later amended the complaint to add a new claim (Count III), which seeks to enforce a grievance award issued in March 2019 in favor of the District Council and against ABN Building Maintenance, Inc. (doc. # 42: Amended Complaint). Thereafter, the District Council filed a motion for summary judgment solely as to Count III of the amended complaint (doc. # 46). On August 1, 2019, defendant filed a notice stating that it would not file a response to the motion (doc. # 54). We therefore closed the briefing and took the matter under advisement (doc. # 55). For the reasons set forth below, we grant the Union's motion for summary judgment as to Count III.

---

[1] On October 18, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 20-21).

# I.

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, we construe the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017). "[T]he non-movant must go beyond the pleadings . . . to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in their favor." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (internal quotations and citations omitted).

In order to facilitate review of summary judgment motions, Northern District of Illinois Local Rule ("LR") 56.1 sets forth a procedure for identifying both agreed and disputed factual contentions. Under LR 56.1(a)(3), the party seeking summary judgment must provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law," along with materials that substantiate each factual assertion. The responding party is then required to provide a point-by-point response to the movant's statement, and where the responding party contends that there is a genuine dispute about a factual assertion, the non-moving party must provide "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" LR56.1(b)(3)(B). Under LR56.1(b)(3)(C), "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

The District Council has provided the required statement of material facts they assert as uncontested, as well as supporting materials (doc. # 48: Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.(1)(a)(3) ("Pl.'s Statement"). As stated above, the defendant elected to forego any response to the motion. We have the discretion to enforce "strict compliance with [the] local rules governing summary judgment," *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000), and thus without more we could deem the District Council's asserted facts to be admitted. *See McMahan v. Deutsche Bank AG*, 892 F.3d 926, 929 n.2 (7th Cir. 2018), *quoting Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission"). That said, we have reviewed the materials offered by plaintiffs to support their factual assertions, and we find the following material facts asserted by the District Council to be established by the summary judgment record.

On June 17, 2016, defendant and the District Council signed an Independent Construction Industry Collective Bargaining Agreement, which covered the period from June 1, 2013 through May 31, 2017 ("the 2013 Joint Agreement") (Pl.'s Statement ¶ 7 and Exs. C1-C2). Thereafter, on April 13, 2018, those same parties signed a second collective bargaining agreement, which covered the period from June 1, 2017 through May 31, 2021 (the "2017 Joint Agreement") (*Id.* ¶ 8 and Ex. C3). These collective bargaining agreements governed the terms and conditions of employment for defendant's employees in the bargaining unit represented by the District Council and its affiliated local unions (Pl.'s Statement ¶¶ 7-8).

Pursuant to the 2013 and 2017 Joint Agreements, "[a]ny dispute concerning the interpretation or application of this Agreement between an employer and the Union shall be adjusted by the particular employer and the Union, in the first instance" (Pl.'s Statement ¶ 9 and

3

Exs. C2 and C3, Arts. 11, ¶ 1). If the employer and District Council are unable to settle the matter, the District Council may file a written grievance, "which shall be submitted to a Joint Grievance Committee (hereinafter the 'JGC') comprised of three (3) Employer representatives . . . and three (3) Union representatives" (Pl.'s Statement ¶ 9 and Exs. C2 and C3, Arts. 11, ¶ 2). The 2013 and 2017 Joint Agreements set forth by whom the various representatives are selected and the time in which a written grievance must be filed, and provides that the JGC is empowered to "adopt its own rules of procedure" (*Id.*).

The JGC's determination of a grievance must be by "majority vote, provided that the Employer representatives and the Union representatives shall have equal voting power" (Pl.'s Statement ¶ 10 and Exs. C2 and C3, Arts. 11, ¶ 2). Any grievance decided by majority vote, and any relief awarded by the JGC as a result, "shall be binding and final upon all parties" (*Id.*). If a party fails to comply with an award within seven days after receiving notice of the JGC's award, that party "shall be responsible for an additional ten percent (10%) liquidated damages on any monetary award and all court costs and reasonable attorney fees actually incurred by the party enforcing the award" (Pl.'s Statement ¶ 18 and Exs. C2 and C3, Arts. 11, ¶ 5).

On March 12, 2019, the District Council filed a written grievance asserting that defendant failed to properly pay wage and fringe benefits for the period June 17, 2016 through July 31, 2017 (Pl.'s Statement ¶ 11, Ex. B (Zarris Dec.) ¶ 3 and Ex. B1). On that same day, the JGC -- composed of two voting employer representatives, two voting Union representatives, and one non-voting union representative -- conducted a hearing on the grievance (Pl.'s Statement, Ex. B (Zarris Dec.) ¶ 5).[2] Both sides attended the hearing, and had an opportunity to offer evidence (Pl.'s Statement

---

[2] We note that plaintiffs' fact statement asserts that six persons (three employer representatives and three Union representatives) presided over the hearing (Pl.'s Statement ¶ 12). However, the only support cited for that assertion is (a) the Zarris Declaration, which clearly says the JGC consisted of a total of four voting representatives and one

4

¶ 13 and Ex. B (Zarris Dec.) ¶ 6). After hearing the evidence, a majority of the JGC members upheld the grievance filed by the District Council (Pl.'s Statement ¶ 14, Ex. B (Zarris Dec.) ¶ 7 and Ex. B2). Based on that determination the JGC required defendant to make payments totaling $651,855.01, consisting of (a) $376,257.55 in unpaid benefits, dues, interest, liquidated damages and audit costs; (b) $183,101.64 in unpaid wages; and (c) $91,550.82 in liquidated damages and $945.00 in audit costs in connection with the unpaid wages award (*Id.*).

The JGC's written award is dated March 15, 2019 (Pl.'s Statement, Ex. B2), and a copy of it was sent to defendant on that date (Pl.'s Statement ¶ 15 and Ex. B (Zarris Dec.) ¶ 8). The award states that if defendant failed to make the required payments "within seven (7) days of March 22, 2019," the defendant additionally would be required to pay "liquidated damages equal to ten percent (10%) of the monetary award and all court costs and reasonable attorney fees actually incurred by the party enforcing the award" (Pl.'s Statement, Ex. B (Zarris Dec.) ¶ 7 and Ex. B2). As of the date plaintiffs filed their summary judgment motion (April 29, 2019), no payment had been made (Pl.'s Statement ¶ 17 and Ex. C (Flanagan Dec.) ¶ 8).[3]

## II.

There is no dispute that the Court has subject matter jurisdiction over this action brought under the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(e)(1) and 2 and 1145, and the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a), or that venue is proper in this jurisdiction (doc. # 44: Answer to Amended Complaint ¶¶ 1-2). Indeed, as the Seventh Circuit has held, a "failure to comply with a joint

---

non-voting representative and (b) the Flanagan Declaration (Pl.'s Statement, Ex. C ¶ 6), which does not state the total number of members of the JGC. That discrepancy is not material to our ruling on the motion.

[3] The award contains a discrepancy concerning the date for defendant's compliance: the award states that the deadline was "within seven (7) days of March 22, 2019," which would be by March 29, 2019, "*or* by March 25, 2019 (Pl.'s Statement, Ex. B2 ¶ 11) (emphasis added). Since both dates long have passed without payment being made, that discrepancy is immaterial.

committee award is a breach of a federal labor contract subject to section 301 jurisdiction . . . ." *Merryman Exc, Inc. v. Int'l Union of Operating Engr's. Local 150*, 639 F.3d 286, 290 (7th Cir. 2011).

There also is no dispute in this case that defendant has failed to comply with the JGC award. Defendant offers no explanation for the refusal or any basis upon which we should decline to enforce the award. To be sure, since the parties contracted for a JGC determination that would be binding and not subject to appeal, "we are not permitted to review the merits of the procedure or substance" of the decision. *Merryman Exc.*, 639 F.3d at 293.

That said, even in the absence of a response by the defendant, we have considered whether certain possible procedural questions raised by the summary judgment record are sufficient to warrant denial of enforcement of the JGC award. We find that they are not.

For example, while the 2013 and 2017 Joint Agreements state that a grievance may be presented to the JGC only after the employer and the District Council have attempted to settle the dispute without success, the District Council does not specifically assert that they engaged in those pre-grievance settlement efforts. However, in *Merryman Exc.*, 639 F.3d at 291, the Seventh Circuit explained that the question of a party's compliance with the proper pre-grievance procedures is for the JGC (and not the courts) to resolve. Here, since the JGC proceeded to hearing and issued an award, we may infer that it found no discrepancy in the pre-grievance procedures – or at least none that warranted declining to move forward with the hearing.

We also note that while the 2013 and 2017 Joint Agreements state that the JGC would be composed of three employer and three Union members, in this case the JGC consisted of only two voting members from each side. However, those agreements appear to contemplate that there might be fewer than three members from each side of the table, by stating that the determination

6

of the JGC must be by majority vote, "provided that the Employer representatives and Union representatives shall have equal voting power" (Pl.'s Statement, Exs. C2 and C3, Art. 11 ¶ 2). If the agreements invariably required no fewer than three members from each side, then there always would be equal voting power and it would be unnecessary to include that language.

Thus, we agree with plaintiffs that the JGC award is enforceable so long as there was an equal quorum of voting members from each side. As the Seventh Circuit explained in *Merryman Exc.*, 639 F.3d at 291, the touchstone is "equal representation" from each side, which the undisputed facts show was achieved in this case. The District Council is therefore entitled to enforcement of the JGC award. *Merryman Exc.*, 639 F.3d at 293 (stating that "absent evidence that Merryman was not equally represented on the joint committee, the joint committee's decision is binding and not subject to appeal").

## CONCLUSION

For the foregoing reasons, we grant the District Council's motion for summary judgment as to Count III of the amended complaint (doc. # 46). We enter judgment in favor of the District Council and against defendant on Count III in the amount of $717,040.51, consisting of the JGC award totaling $651,855.01 and an additional 10 percent of that amount ($65,185.50) for failing to timely pay the award; and we award the District Council its reasonable attorneys' fees and costs incurred in obtaining the judgment on Count III.

The matter is set for a status hearing on September 10, 2019 at 9:00 a.m. At that time, the parties (1) shall be prepared to discuss the disposition of Counts I and II of the amended complaint, and (2) shall present either an agreement as to the attorneys' fees and costs to be awarded or, in the absence of agreement, a proposed schedule for submitting that question to the Court for ruling.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATE: August 7, 2019**